## BEEM v. BEEM.

[No. 23,808. Filed October 11, 1923.]

1. **HUSBAND AND WIFE.**—*Alienation of Affections.*—*Instruction.*—In an action by a wife against her husband's parents for alienation of her husband's affections, an instruction that if the jury found that the defendants had made certain statements to plaintiff's husband "which caused him to lose his faith and confidence in and love for her", the verdict should be for the plaintiff, was erroneous, for the reason that the instruction should have submitted to the jury the question whether or not plaintiff possessed the love, faith and confidence of her husband at the time those facts occurred. p. 485.

2. **HUSBAND AND WIFE.**—*Alienation of Affections.*—*Instruction.*—In an action by a wife against her husband's parents for alienating her husband's affections, in which there was no evidence that the father had been present and had participated in the alleged wrongful acts of the mother, or that the mother had been present and had participated in the alleged wrongful acts of the father, instructions authorizing a verdict for the plaintiff if "either" defendant had committed certain acts, and that exemplary damages might be awarded if "either" defendant was actuated by malice or ill will, were erroneous for failure to declare the circumstances under which a verdict might be given against one defendant and not against the other. p. 486.

3. **HUSBAND AND WIFE.**—*Alienation of Affections.*—*Instruction.*—In a wife's action against her husband's parents for alienating her husband's affections, where it was charged that the defendants had written false and malicious statements to their son concerning the plaintiff, an instruction that "the circulation of such false and malicious reports" justified a finding that defendants were actuated by malice and intended to destroy the husband's affections for her, was erroneous in many particulars, but especially because of the fact that it invaded the province of the jury to determine, from the consideration of all the evidence, whether the acts of the defendants were really prompted by ill will toward plaintiff, and done with malice, or were done without malice, prompted only by the interest which defendants felt for their son and his welfare. p. 487.

4. **HUSBAND AND WIFE.**—*Alienation of Affections.*—*By Parents.*—*Rule Stated.*—One spouse cannot recover damages for the alienation of the affections of the other from the latter's parents unless the acts of the parents which are alleged to

have caused the alienation were prompted by ill will and were done maliciously, and whether this was the fact is a question for the jury.  p. 488.

5. HUSBAND AND WIFE.—*Alienation of Affections.—By Parents. —Instruction.*—In an action by a wife against her husband's parents for alienating her husband's affections, in which there was evidence that there had been numerous quarrels, "jars" and separations for short periods, an instruction to find for the plaintiff if the defendants did certain things with the design to "effect a complete separation", and thereby caused plaintiff "the loss of the affections, comfort, fellowship, society, aid and association of her husband", was erroneous, as it did not submit to the jury the question whether the subsequent acts of defendants which caused the final separation were prompted by ill will and were done maliciously.  p. 488.

6. HUSBAND AND WIFE.—*Alienation of Affections.—By Parents. —Instruction.*—In an action by a wife against her husband's parents for alienating her husband's affections, it was error to refuse to give an instruction, duly requested by the defendants, that the plaintiff could not recover unless the acts of the parents were impelled by a spirit of malice and ill will toward the plaintiff, in the absence of an affirmative statement to that effect in the instructions given, mere introductory recitals to such effect in stating the facts under which the verdict should be for the plaintiff not being sufficient.  p. 489.

7. EVIDENCE. — *Secondary Evidence. — Contents of Destroyed Writings.*—The fact that the party who received a social letter destroyed it is not sufficient reason for excluding evidence of its contents in the trial of a collateral action thereafter commenced, the contents becoming material only by reason of subsequent events which she had no reason to foresee, as the destruction of a writing in the usual course of business, when it had no value and was not then, nor likely to become, evidence for or against the party destroying it, cannot be held presumptively fraudulent.  p. 489.

8. EVIDENCE. — *Secondary Evidence. — Contents of Destroyed Writings.*—In an action by a wife against her husband's parents for alienating her husband's affections, the mother's testimony as to the contents of a social letter received from her son, which had been destroyed by her before the commencement of the action, at a time when she had no knowledge that it would ever be competent as evidence in any action, the contents becoming material by reason of subsequent events which she had no reason to foresee, was admissible, as the destruction of such letter was not presumptively fraudulent. p. 489.

From Owen Circuit Court; *Robert W. Miers*, Judge.

Action by Myrtle M. Beem against Malinda B. Beem and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*J. H. Fowler, S. C. Kivett* and *J. E. Henley*, for appellants.

*Herbert A. Rundell, W. L. Slinkard* and *Homer Elliott*, for appellee.

EWBANK, J.—Appellee, who was the plaintiff below, recovered a judgment for $10,000 damages against appellants for the alienation of her husband's affections. Appellants are the parents of appellee's husband.

The complaint stated a cause of action for acts alleged to have been done maliciously by the two defendants, by means of which it was alleged the wrong complained of was done. There was evidence that Malinda B. Beem, the mother-in-law, wrote two letters to plaintiff's husband which are relied on as having contained false statements concerning plaintiff, with advice not to write to her, and an admission that the writer was trying to help him get a divorce. But they were written in the first person, singular, and Mrs. Beem's codefendant was not shown to have been connected with them in any way, nor to have had knowledge that they were written. There was also evidence that the mother-in-law did and said certain things tending to show that she was trying to induce her son to leave plaintiff or not to live with her, or to believe plaintiff unworthy of his love, including the testimony of a man who "drove up with" her and her son as they were riding along the highway in a buggy and heard her tell the son that "if you don't go away and leave that woman and stay away from her, at my death I'll will you out." At least nineteen-twentieths of the evidence tending to establish a cause of action relates to

what the mother-in-law said and did, and there was evidence that plaintiff's husband blamed her for some of the trouble between him and plaintiff. But all or practically all of the acts and sayings of Malinda B. Beem were done and said when her codefendant, William Henry Beem, was not present, and there was nothing to show that he participated in them or even knew about them. There was also evidence that the defendant William Henry Beem came to plaintiff's home for her husband's registration card, intending to send the card to the young man where he was doing war work in New Jersey, and hunted for it, but that plaintiff would not let him have it and he became angry and stopped giving plaintiff and her baby milk and provisions; but Malinda B. Beem was not present when this occurred. And there was evidence that he said certain things to plaintiff's husband (his son) at two or three different times, and said certain things to plaintiff and to the neighbors at other times, which indicated that he did not feel very kindly toward plaintiff. But in almost or quite every instance, his wife and codefendant was not present and is not shown to have known what he said and did. Defendants introduced much evidence to the effect that before the letters were written containing the alleged false statements, and before many, if not all, of the words complained of were spoken or the acts complained of were done, the plaintiff had already lost her husband's love, and he had once sued her for a divorce, and after dismissing that suit, had again left her with the declared purpose of obtaining a divorce, and had consulted and employed a lawyer with that purpose. There was also evidence that the father of Malinda B. Beem owned 500 acres of land worth $40 to $45 per acre, and $600 in notes when he died, and that she was his sole heir; that he was alive at the time of the separation, when plaintiff's husband

sued for a divorce, and was dead at the time of the trial, three years later, but it was not shown when he died; and that the defendants had on the farm at the time of the trial horses, mules, hogs and cows, of a value not stated, and feeding cattle worth $550 to $660 and farm machinery worth about $1,000; but it was not shown how much of the live stock and farm machinery belonged to William Henry Beem and how much to Malinda B. Beem; and the jury was instructed in the most general terms (No. 10) that if they found that the defendants, or either of them, were actuated by malice and ill will toward the plaintiff, they might award such exemplary damages as, in their judgment, was proper, under the circumstances proved, in addition to the damages which would compensate plaintiff for all her injuries.    And the court also gave an instruction requested by the plaintiff (No. 1) as follows (our italics):   "1. While it is the general rule that parents, in counseling and advising their children, act in good faith, and from the loftiest motives, and while they can be liable for causing a separation between their child and the husband or wife of such child, only when it is shown that they acted from malice; yet, if you find from the evidence that the defendants in this case *or either of them,* falsely and maliciously told to plaintiff's husband falsehoods concerning her and made slanderous and false statements to him about her, which *caused him to lose his faith and confidence in and love for her,* you are instructed that such conduct would render the defendant or defendants so offending liable to plaintiff, and *your verdict should be for the plaintiff."*

A binding instruction to "find for the plaintiff" if certain facts were found should have submitted to the jury for decision the question whether or not plaintiff possessed the love, faith, and confidence of her husband at the time those facts occurred.

There was no conclusive presumption that the wife retained the love and confidence of her husband at that time, there being evidence to the contrary. And the defendants had the right to go to the jury on the question whether or not he had love for her, and faith and confidence in her at the time they did the acts (if any) complained of.

As was stated above, there was no evidence directly connecting the defendant, William Henry Beem, with the alleged false statements about plaintiff contained in the letters from Malinda B. Beem addressed to plaintiff's husband, nor with any of the alleged oral false statements which witnesses testified they had heard her make. And the few statements concerning plaintiff which could possibly be classed as false or slanderous shown to have been made by William Henry Beem were made when his codefendant was not present, and she was not shown to have had any part in them. The general instructions that "your verdict should be for the plaintiff" if "either" defendant maliciously told her husband falsehoods by which his affections were alienated, and that exemplary damages might be awarded if "either" defendant was actuated by malice and ill will, should not have been given. Two other instructions (Nos. 3 and 7) contained the same defect of authorizing a general verdict "for the plaintiff" if "either" defendant had alienated her husband's affections from her, and no instruction was given which undertook to declare the circumstances under which a verdict might be found against one defendant and not against the other. What forms of verdict, if any, were submitted, other than the one which the jury adopted, is not made to appear. Giving these instructions constituted error that is not shown to have been harmless or to have been cured.

Instruction No. 7 was as follows (our italics): "If

you find from the evidence in the case that the defend-
ants *or either of them* wrote letters to plaintiff's

3.   husband which were received by him in which
statements were made of and concerning plain-
tiff, that from their nature were calculated to and did
impair the love and respect which plaintiff's husband
had theretofore had for her, and you further find that
the statements contained in said letters were falsely
and maliciously made, you are instructed that the *cir-
culation of such false and malicious reports would be
sufficient to justify you in finding that such conduct was
actuated by malice and intended to destroy the affec-
tion of plaintiff's husband for her, and your verdict
should be for the plaintiff."*   There was no evidence
whatever that William Henry Beem wrote any letters,
and defendants' evidence was to the effect that before
the letters referred to were written by Malinda B. Beem,
plaintiff had twice left her husband; that he had sued
her for a divorce and withdrawn the suit at the re-
quest of defendants; that he had gone away to New
Jersey to do "war work" in a powder mill, and she had
rejoiced to see him go; and that, for months and years,
she had treated him in a manner that was far from
loving.   The defendants had the right to have the ques-
tion submitted to the jury whether or not they believe
this evidence to be true, or believed plaintiff's evidence
to the contrary; and it was error for the court to
assume that plaintiff's evidence was true, and direct a
verdict for the plaintiff if either defendant had ma-
liciously made a false statement in her letters, even
though written after the parties were estranged.   This
instruction was erroneous for the same reasons as the
instruction numbered one.   The italicised part also in-
vaded the province of the jury to determine from a
consideration of all the evidence whether or not the
acts of the defendants were really prompted by ill will

toward plaintiff, and done with malice, or were done without malice, prompted only by the loving interest which defendants felt in their son and his welfare. The instruction is very loosely drawn, and the different parts are contradictory, but we think that the jury could hardly understand it in a sense that would not be erroneous.

The instruction No. 8, submitted to the jury the question whether plaintiff's husband "had great love and affection for the plaintiff at the time of their marriage and soon thereafter", followed by quarrels, jars and separations for short periods, and whether the defendants did certain acts after plaintiff and her husband had so separated and reunited, and concluded with a direction to "find for the plaintiff" if defendants did those things with the design to "effect a complete separation", and thereby caused plaintiff "the loss of the affections, comfort, fellowship, society, aid and association of her husband." But it did not leave to the jury any question as to whether or not plaintiff possessed the affections of her husband after the repeated quarrels, jars, and separations and reunitings, nor whether the subsequent acts of defendants which caused the final separation were prompted by ill will and were done maliciously. Those were essential elements of the alleged cause of action, without proof of which plaintiff was not entitled to recover as against her husband's parents. Both of such facts were controverted, the evidence being sharply conflicting. Whether these facts, or either of them, had been established by proof were questions for the jury, and an instruction to "find for the plaintiff" upon certain enumerated facts that did not include them was erroneous.

An instruction (No. 23) duly requested by the defendants was refused by the court, of which the material part reads as follows:    (Our italics) :    "In deter-

mining whether the defendants, the parents of

6. Beem, are liable for inducing him to leave his wife, said plaintiff, if you shall find that they did anything to persuade or induce him to leave and live separate and apart from her, it. is proper for you to consider all the facts and circumstances in evidence, and from the evidence in the case determine whether or not the defendants did anything to induce the separation, and *if they did, were they impelled by a spirit of malice and ill will toward said plaintiff or were they acting in good faith and without malice and what they considered for the best interest of said Bruce. If the latter, your verdict should be for the defendants."*

This instruction correctly states the law and should have been given. No affirmative statement of the law on this subject was contained in any instruction that was given, and mere introductory recitals to that effect in declaring the facts under which the "verdict should be for the plaintiff" were not sufficient.

Plaintiff produced a letter addressed to her husband, in the handwriting of Malinda B. Beem, which recited that the writer had talked to an attorney and stated

7, 8. what advice the attorney had given on the subject of the husband applying for a divorce, and asked him to "burn this as soon as you read it", which letter plaintiff said she found in the pocket of her husband's coat, about two months after he went to New Jersey to work in a powder factory. The defendant, Malinda B. Beem, testified that after her son went to New Jersey, leaving plaintiff in Indiana, she received a letter from him on the subject of her going to see the attorney, and then went to see him, and that she wrote the letter read in evidence by plaintiff and never received an answer to it; plaintiff's husband having testified that it was never received by him. Mrs. Beem then testified that she did not have the letter she re-

ceived from her son; that she generally destroyed her letters because she did not want them lying around; that it was gone; that when she received letters she sometimes destroyed them and sometimes did not, and did not know about this one, but believed she destroyed it; that her attorney said for her and her son to burn their letters. It appeared that the letter she referred to was received and answered some months before suit was commenced in the case at bar. It could not have evidenced any agreement relied on as the basis of an alleged cause of action or defense in any suit that could be commenced; no suit was pending at the time, and it did not appear that she had any reason to apprehend that the letter she destroyed ever would be material evidence in favor of herself or of anybody else in any future action. She was asked to "tell the jury what was in that letter as far as you can remember." And upon an objection being interposed, the defendants offered to prove by the witness, in answer to the question, that in the letter, her son Bruce told her that he did not intend to come back, and that he wanted her to go and see the attorney as to whether he would have to come back here in order to get a divorce, and for her to write him what the attorney said on the subject. The objection was sustained and the offered evidence was excluded. The reason stated in the objection sustained by the court was that, "when anyone destroys written evidence herself, she is not entitled to prove the contents orally"; and that is the reason by which appellee now seeks to justify the ruling. But the mere fact that a party who received a letter destroyed it is not sufficient reason for excluding evidence of its contents, when they become material in the trial of a collateral action afterward commenced by a person other than the writer or the addressee of the letter, by reason of another letter written in answer to it being read in

evidence against the person to whom it was addressed. *Rudolph* v. *Lane* (1877), 57 Ind. 115, 118; *Schlemmer, Admr.*, v. *Schendorf* (1898), 20 Ind. App. 447, 454, 455, 49 N. E. 968; *Old Nat. Bank* v. *Findley* (1892), 131 Ind. 225, 230, 31 N. E. 62; *Gibbs* v. *Potter* (1906), 166 Ind. 471, 477, 478, 77 N. E. 942, 9 Ann. Cas. 481; *Pollock* v. *Wilcox* (1873), 68 N. C. 46, 50, 51; *Murphy* v. *Olberding* (1899), 107 Iowa 547, 548, 78 N. W. 205; *Hoblit* v. *Howser* (1912), 171 Ill. App. 19, 22; *Riggs* v. *Tayloe* (1824), 9 Wheat. (22 U. S.) 483, 485, 6 L. Ed. 140.

The rule which excludes secondary evidence of a written contract that is the foundation of an action or defense, when offered by a party to the action who is shown to have destroyed it unlawfully or for a fraudulent purpose, with knowledge that it would be material evidence in a pending action, or in an action which the party destroying it had reason, at the time, to believe would be commenced, is not applicable to the facts of this case. Here the letter destroyed was not contractual and could not be the foundation of a cause of action or defense; no action was pending, and the party who destroyed the letter had no knowledge that it would ever be competent as evidence in any action. It was merely a social letter from a son to his mother, the contents of which became material by reason of subsequent events which she had no reason to foresee. The destruction of a writing in the usual course of business, when it had no value and was not then nor likely to become evidence in the party's favor, cannot be held presumptively fraudulent. *Pollock* v. *Wilcox, supra.* The destruction of letters in the natural course of business which the party did not know and had no reason to suppose would ever be of any value or have any use does not exclude evidence of their contents on behalf of the party who destroyed them, if it should become

material in a suit afterward commenced. *Hoblit* v. *Howser, supra.* It was error to exclude the offered evidence.

From what has been said it follows that the judgment must be reversed. Therefore, it is not necessary to consider and we do not decide whether or not the failure of a juror to disclose that he was incompetent because of his relationship to plaintiff was waived by appellant's failure to question him more closely on the subject of such relationship, nor whether the effect of applause given by the plaintiff's father and friends when her attorney attacked the credibility of defendant's witnesses in argument was neutralized by a direction which the court gave the jury to disregard it, when considered in connection with an instruction to determine the credibility of the witnesses from "all the other facts and circumstances occurring in their presence." It is not probable that either irregularity will occur when the cause is again tried.

The judgment is reversed, with directions to sustain the motion for a new trial.

Townsend, J., absent.