## BELL ET UX. *v.* BELL.

[No. 14,057.   Filed April 17, 1931.]

*Joseph C. Herron,* for appellant.

*Fred J. Byers* and *Overson & Manning,* for appellee.

LOCKYEAR, C. J.—This was an action brought by appellee charging appellants with alienating the affection of appellee's husband, who was appellants' son. The

complaint alleges that appellee was duly and legally married to one Frank Bell, the son of the appellants, on October 16, 1928, and lived together as husband and wife until February 14, 1929. Appellee alleges that she and the said Frank Bell lived together happily and with a great deal of affection and love for each other until on or about January 1, 1929, when the appellants herein, for the purpose of separating appellee and her husband, and with the intention of alienating said husband's affections, maliciously made false and defamatory remarks to her said husband concerning the appellee, and held her up in scorn and urged said husband to neglect and abandon her; that appellee's said husband is the son of said appellants and was easily influenced, and the appellants exercised a great power and influence over said Frank Bell, and, through and by their efforts and influence and power, these appellants caused him to leave, desert and abandon the appellee; and that on February 14, 1929, the said Frank Bell left, abandoned and separated from her, and has since refused to provide a home for her, contribute to her support or recognize her as his wife, for which she prays damages.

The case was tried before a jury, with a resulting verdict and judgment in the sum of $2,000 against appellants.

The appellants filed a separate and several motion for a new trial, wherein it is alleged that the court erred in giving instructions Nos. 2, 3, 4, 5, 11 and 12, tendered by the plaintiff and given by the court; also that the verdict is not sustained by sufficient evidence and is contrary to law.

There is some evidence in the record that the appellant Sadie Bell, mother of Frank Bell, was dissatisfied with the marriage of her son, and that she expressed herself freely to various persons in the neighborhood to that effect, and she also expressed herself to her son.

Frank Bell and his wife went to live with her mother and father shortly after they were married, and it appears from the evidence that Frank was an industrious young man, working at what is known as "The Davis Industries" in Kokomo, Indiana; that he and his wife became sick with influenza; that his father and mother visited them while they were sick, and, after they became well, Frank Bell, appellee's husband, concluded that the best place for him was back on his father's farm, that he consulted a lawyer about the advisability of moving to his father's farm and whether he had the legal right to select their place of residence, and, after receiving advice of his attorney, the father, Sylvester Bell, provided a house on his farm, and the son, Frank Bell, moved the personal effects of himself and wife to that place; that he and his wife went to the home of his father, and that the appellants and the appellee, together with the son, had a conversation, wherein Sylvester Bell and Sadie Bell, the appellants herein, asked the appellee, their daughter-in-law, to forgive them for anything they may have said concerning her. There is no evidence that Frank Bell ever abandoned her as alleged in the complaint. On the other hand, he tried to persuade her to remain with him, but she abandoned him and went to her people and worked in a store as a clerk in Kokomo, Indiana; that Frank Bell visited her at the store, bought articles of merchandise from her at the store, and asked her to return to him, which she refused to do. He testified that the household goods were out in the little house and that is where he is now living; that the little house is still open for her; that he had nothing against her; that his affections were the same as they always were for her; that all he wanted was for her to come and live with him; that he had the house furnished; and that his parents had no influence over him in the matter.

Instruction No. 2 is as follows: "The wife is entitled to the society, companionship, protection and aid of her husband and the law gives her a right of action against any person who wilfully and maliciously entices, persuades, induces or influences her husband to separate or remain apart from her."

Appellee's brief says this action is brought by the appellee charging appellants with alienating the affections of her husband, who was their son, and that the issue in this case was whether or not appellants had alienated the affections of appellee's husband. Appellee, having adopted the above as the theory of her complaint, renders instruction No. 2 erroneous, and the contention of appellant that it is not within the issues and is not confined to the allegation of the complaint is well taken, for this action is not primarily brought for wrongfully inducing or influencing the appellee's husband to separate or remain apart from her, but for the loss of his love and affection, and that the separation as alleged in the complaint is only a result of the alienating of his affections.

Instruction No. 3 is erroneous for the same reason, and is as follows: "I instruct you that if you find from all the evidence in this case that the defendants willfully and maliciously acted in concert or co-operated together with the purpose and intent to cause the separation of said plaintiff's husband from the plaintiff, and to cause said plaintiff's husband to remain apart from her and you further find that the said defendants did hereby accomplish such purpose and intent, if you so find from the evidence, then your verdict should be for the plaintiff." See the case of *Beam* v. *Beam* (1923), 193 Ind. 481, at page 485, 141 N. E. 81.

Appellee, to support her contention, cites §8743 Burns 1926, which reads: "Whenever a married woman com-

mits a tort by the direction of her husband, or in his presence with his consent, they shall be jointly liable therefor." In this case, the father, Sylvester Bell, is not shown to have said an unkind word concerning the son's wife, and under all circumstances, spoke to and of her in the kindest terms. We cannot agree to a construction of the statute quoted to mean that a man must be liable for all derogatory statements that his wife might make in his presence without his knowing what she was going to say before she said it. There is no evidence that whatever Sadie Bell may have said was with the consent of her husband, Sylvester Bell.

There is no evidence that the appellee's husband abandoned her or that his affections have been alienated.

The instructions above set out were erroneous and harmful.

For these reasons, the judgment is reversed.